IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Levert Ervin,                     :

        Plaintiff,       :   Case No. 2:16-cv-186

  v.                              :   JUDGE MICHAEL H. WATSON
                                  Magistrate Judge Kemp
Dr. Michael Davis,                :

        Defendant.       :

REPORT AND RECOMMENDATION

Plaintiff, Levert Ervin, an inmate at the Grafton Correctional Institution ("GCI"), filed this lawsuit pursuant to 42 U.S.C. §1983 alleging that his constitutional rights were violated by the defendant, Dr. Michael Davis. He also alleges that he is entitled to relief under the Religious Land Use Institutionalized Persons Act ("RLUIPA"). This matter is now before the Court on Mr. Ervin's motion for partial summary judgment and Dr. Davis' motion for summary judgment. For the following reasons, it will be recommended that Mr. Ervin's motion for partial summary judgment (Doc. 9) be denied and Dr. Davis' motion for summary judgment (Doc. 16) be granted.

I. BACKGROUND

Mr. Ervin moved for leave to proceed in forma pauperis and submitted a verified complaint on February 29, 2016 (Doc. 1). The only named defendant is Dr. Michael Davis, the Religious Services Administrator for the Ohio Department of Rehabilitation and Correction ("ODRC"), in his official and individual capacities. Dr. Davis filed his answer on April 28, 2016 (Doc. 6). On September 28, 2016, Mr. Ervin filed a motion for partial summary judgment on his First Amendment claim only (Doc. 9). Dr. Davis filed a responsive brief and cross-motion for summary

judgment (Doc. 16). Mr. Ervin filed a response (Doc. 17) and Dr. Davis filed a reply (Doc. 18).

The following factual summary is derived from the pleadings, the summary judgment motions and related briefs filed by the parties, and their exhibits. Mr. Ervin submitted a Request to Change Religious Affiliation to Ronald Smith, the GCI Chaplain, on or about August 20, 2015, requesting to change his religious affiliation from Pentecostal Christian to Natsarim (also known as Messianic Judaism). The request was approved on the same day. Complaint at ¶4. In December of 2015, the GCI Warden approved additional requests by Mr. Ervin for religious accommodations: (1) to own and wear Kippahs (yarmulke or skullcaps); (2) to own and wear a Tallit (prayer shawl); (3) to own and wear three Tzitzits (undergarments with tassels of strings); and (4) a work proscription to be excused from work on the Sabbath (Friday Sundown to Saturday sundown). Id. ¶¶5-6. In a separate request in September of 2015, Mr. Ervin requested a kosher diet, and attended an interview with Chaplain Smith in relation to this request. During the interview, Mr. Ervin changed his mind about his request and requested that Chaplain Smith "tear that accommodation form up." Id. ¶¶10-11. Mr. Ervin does not recall telling Chaplain Smith to tear up the form, but admits to telling Chaplain Smith that he would "hold off for now" because he wanted to research how the kosher meals would affect his low protein diet. (Doc. 17, Ex. 10). On December 21, 2015, Mr. Ervin again requested that he be provided with a kosher diet, but the request was denied by Dr. Davis on January 29, 2016. Complaint, ¶7, Ex. A. The denial was based on Chaplain Smith's recommendation, which stated that he "would not recommend it based on information/disposition of a prior request," referring to the September, 2015 interview. (Doc. 16, Ex. A, ¶9). Mr. Ervin did

not submit another request for kosher meals until March 18, 2016, which was approved on April 11, 2016. Id. ¶¶12-13, Ex. E-F.

Dr. Davis avers that he denied Mr. Ervin's September and December 2015 requests for kosher meals based solely on the recommendation of Chaplain Smith. (Doc. 16, Ex. A, ¶9). Dr. Davis states that as a matter of policy he does not individually interview inmates who submit requests for religious meal accommodation, as that is the duty for prison chaplains or other religious officials at each institution. The reason for this is because he would not have time to conduct separate interviews with each inmate, and the individuals working within each institution are able to personally observe the inmates' behavior and participation in faith practices. Id. ¶4-6.

Mr. Ervin asserts in his complaint that by being denied a kosher diet, he will be precluded from observing the Passover Seder and participating in eating matzah for Passover and the Feast of Unleavened Bread ("Feast"), which are major tenets of Natsarim. Complaint, ¶18. He argues that Dr. Davis acted with an "evil intent/motive" to deny him of his right to practice his religion. Mr. Ervin claims that Dr. Davis knew, or should have known, that by denying him kosher meals he was violating his rights under the First and Fourteenth Amendments to the Constitution and RLUIPA. In support of his claims, Mr. Ervin refers to a number of related lawsuits that have been filed in this Court by other GCI inmates who were ultimately granted kosher meals. See Case Nos. 2-14-cv-614; 2-14-cv-971; 2-14-cv-1054; 2-14-cv-1219; 2-14-cv-2099; and 2-15-cv-2704. Complaint, ¶14. Mr. Ervin also furnished declarations from himself and a fellow inmate attesting to his sincerely held belief in Natsarim, but the sincerity of his belief is not in dispute. (Doc. 17, Ex. A-B).

Mr. Ervin seeks a declaratory judgment stating that Dr. Davis' actions and inactions violated his constitutional and statutory rights by substantially burdening the practice of his religion, not being the least restrictive means of furthering any compelling government interest. He also seeks for Dr. Davis to approve his request for a kosher diet and for the Court to award compensatory damages for the violation of his rights, including $4,335.00 which he calculated based on a cost of $3.75 per missed kosher meal (621 meals allegedly missed) plus his expenses related to bringing this litigation. Id. at 8-9.

In his motion for partial summary judgment, Mr. Ervin asserts that he is entitled to judgment as a matter of law because Dr. Davis prevented him from exercising his religion due to denying his requests for kosher meals. Dr. Davis asserts that he is entitled to judgment as a matter of law because, among other reasons, Mr. Ervin has failed to demonstrate that his constitutional rights were violated and because no relief is available to him under RLUIPA.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute. It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464 (1962). The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving

party. United States v. Diebold, Inc., 369 U.S. 654 (1962). The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion. It is with these standards in mind that Dr. Davis' motion for summary judgment must be decided.

### III.  RLUIPA

Section 3 of RLUIPA provides in pertinent part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." §2000cc-5(7)(A). The threshold inquiry, however, is "whether the challenged governmental action substantially burdens the exercise of religion." Baranowski v. Hart, 486 F.3d 112, 124 (5th Cir. 2007); see also Barhite v. Caruso, 377 F.App'x. 508, 511 (6 th Cir. 2010). RLUIPA does not provide a cause of action against defendants in their individual capacities. Colvin v. Caruso, 605

F.3d 282, 288 (6th Cir. 2010). RLUIPA permits "appropriate relief against a government," but the Sixth Circuit has held that such relief does not extend to monetary damages. Cardinal v. Matrish, 564 F.3d 794, 801 (6th Cir. 2009); see also Nelson v. Jackson, 2014 WL 197877 (S.D. Ohio Jan. 15, 2014).

In the Cardinal case, the plaintiff inmate sued under RLUIPA because the prison failed to provide him with kosher food, but he was later transferred to a facility that provided him with kosher meals. The court held that because the inmate had received the relief in the form of kosher meals and was not entitled to monetary damages, his RLUIPA claim was moot. Cardinal, supra, 564 F.3d at 798-99. It is undisputed by the parties that Mr. Ervin was approved for kosher meals on April 11, 2016. Thus, because monetary damages are not available under RLUIPA, his claim under that statute is now moot pursuant to the holding in Cardinal.

## IV. CONSTITUTIONAL CLAIMS

To establish a prima facie claim under §1983, a plaintiff must satisfy two elements: (1) that defendants acted under color of state law, and (2) that defendants deprived plaintiff of a federal statutory or constitutional right. See, e.g., Flagg Bros. v. Brooks, 436 U.S. 149, 155 (1978); Searcy v. City of Dayton, 38 F.3d 282, 286 (6th Cir. 1994); United of Omaha Life Ins. Co. v. Solomon, 960 F.2d 31, 33 (6th Cir. 1992) (per curiam). Conclusory allegations are insufficient to state a claim under §1983. Rhodes v. Chapman, 452 U.S. 337 (1981). Mr. Ervin claims that Dr. Davis' actions violated his First and Fourteenth Amendment Constitutional rights to freedom exercise of religion and equal protection of the law.

### A. First Amendment

In order to demonstrate a violation of the right to religious freedom in the prison setting, a plaintiff must prove the following. First, the plaintiff must show that the religion

in question is, in fact, a religion.  If it is a non-traditional religion, the inmate must show that it "occupies a place in the lives of its members 'parallel to that filled by the orthodox belief in God' in religions more widely accepted in the United States."  Dettmer v. Landon, 799 F.2d 929, 931 (4th Cir. 1986), cert. denied, 107 S.Ct. 3234 (1987). Several sub-issues are involved in making that determination, including whether the doctrines of the religion relate to a spiritual aspect of life, whether the religion adheres to belief in a supreme being, whether it has ceremonial worship practices, and whether it has been practiced or recognized for a significant period of time.  Id.  The plaintiff must also demonstrate a sincere belief in the tenets of the questioned religion.

If a plaintiff can demonstrate a sincere belief in a recognized or legitimate religion, his right to practice that religion should be accommodated unless it interferes in some fashion with the need for internal order and discipline which is essential to the prison setting.  Under the Religious Freedom Restoration Act of 1993 ("RFRA"), which became effective on November 16, 1993, see 42 U.S.C. §§2000bb et seq., burdens placed on the free exercise of religion were permissible only if they furthered a compelling governmental interest and if they were the least restrictive means of furthering that interest.  However, the Supreme Court later concluded that the RFRA exceeded Congress' powers to legislate pursuant to §5 of the Fourteenth Amendment.  City of Boerne v. Flores, 521 U.S. 507 (1997).

Thus, the proper test to be applied to whether an institutional denial of the right to engage in certain religious practices or ceremonies is an appropriate restriction on an inmate's First Amendment rights takes these factors into account: whether the restriction is logically related to a legitimate interest in security, whether the inmate is provided with alternative means of exercising his right to pursue the religion in question, the impact of any accommodations of the practice on

other inmates, prison personnel, or the allocation of prison resources, and the existence of ready alternatives to the challenged regulation or prohibition. O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987); Turner v. Safley, 482 U.S. 78 (1987).

In this case, it is undisputed that Natsarim is a legitimate religion and that Mr. Ervin has sincerely held beliefs. Mr. Ervin's allegations are based on kosher meal accommodation and the opportunity to participate in Passover and the Feast. At the time he initially requested religious meal accommodation, he met with Chaplain Smith to discuss his request. Chaplain Smith concluded, based on that meeting, that Mr. Ervin was not yet committed to a kosher diet because he had said he would "hold off for now" so that he could further research how the diet would affect his health issues. (Doc. 17, Ex. 10). That interview served as the basis for Chaplain Smith's recommendation to Dr. Davis to deny the kosher meal requests in September and December of 2015. (Doc. 17, Ex. 10).

Chaplain Smith was obligated to consider Mr. Ervin's statements and make an informed decision as to whether kosher meal accommodation was appropriate at that time. See, Berryman v. Granholm, 343 Fed. App'x 1 (6th Cir. 2009) citing Russell v. Wilkinson, 79 Fed.App'x 175, 177 (6th Cir. 2003) ("Prison officials have a legitimate penological interest not only in controlling the cost of the kosher meal program and ensuring that only those with sincere beliefs participate in the program, but also in maintaining discipline within the prison."). Dr. Davis, following ODRC policy, relied on the recommendation of Chaplain Smith, and denied the initial request. Viewing the facts in the light most favorable to Mr. Ervin, even if it were determined that Chaplain Smith should have recommended the December 2015 request, Dr. Davis is the only named defendant in this case. In accordance with ODRC policy, Dr. Davis relied on the

recommendations of the GCI Chaplain. Again relying on Chaplain Smith's recommendation, Dr. Davis granted Mr. Ervin's kosher meal accommodation when it was requested again in the spring of 2016.

Mr. Ervin also alleges that by denying his meal accommodation he was or would be prevented from participating in Passover and the Feast. However, the record is clear that Mr. Ervin did not request meal accommodation until September of 2015, subsequent to that year's Passover and Feast. Dr. Davis approved kosher meals for him on April 11, 2016, which was prior to the 2016 Passover and Feast, celebrated from April 22-30, 2016, and he currently continues to receive kosher meals. See Willison v. Davis, 2016 WL 7117390, *3 (S.D. Ohio Dec. 7, 2016). For these reasons, Dr. Davis is entitled to judgment as a matter of law on Mr. Ervin's First Amendment claim.

### B. Fourteenth Amendment

Mr. Ervin also argues that Dr. Davis' actions constituted a violation of his Fourteenth Amendment right to equal protection of the law. "Fundamentally, the [Equal Protection] Clause protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights. The threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." Scarborough v. Morgan County Bd. of Educ., 470 F.3d 250,259 (6th Cir. 2006). "Prisoners are not considered a suspect class for the purposes of equal protection litigation." Jackson v. Jamorg, 411 F.3d 615, 619 (6th Cir. 2005). In order for the actions of prison officials to rise to the level of a violation of the Equal Protection Clause, a prisoner must show that he or she was treated differently than similarly situated prisoners and that

there was no rational basis for the difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

The basis for Mr. Ervin's Equal Protection claim seems to be his belief that, because other inmates housed at Grafton received a kosher diet following lawsuits bringing claims similar to the ones he raises, he should be entitled to the same treatment. Although his initial requests for kosher meals were not approved, his other requests for religious accomodation were approved the first time he asked. Given the recent change in Mr. Ervin's religion and his interaction with Chaplain Smith in September of 2015, the Court does not deem Chaplain Smith's initial recommendations to be unreasonable. It is essential that prison officials be given broad discretion in the day-to-day operation of prisons. Thornburgh v. Abbott, 490 U.S. 401, 413 (1989). Moreover, Mr. Ervin has not demonstrated any discriminatory intent on the part of Dr. Davis, and it is undisputed that he was ultimately provided with kosher meals when it was determined that it was appropriate to do so. Dr. Davis followed ODRC protocol by following the recommendation of the GCI chaplain, and Mr. Ervin cannot show that he was treated any differently by Dr. Davis than similarly situated inmates. Dr. Davis is entitled to judgment as a matter of law on the Equal Protection claim.

Viewing the evidence in the light most favorable to Mr. Ervin, there is no issue of material fact that he can demonstrate either a constitutional violation or a claim under RLUIPA.

VI. CONCLUSION

For the foregoing reasons, it is recommended that Mr. Ervin's motion for partial summary judgment (Doc. 9) be denied, that Dr. Davis' motion for summary judgment (Doc. 15) be granted, and that this case be dismissed.

PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp
United States Magistrate Judge